UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FATIMA KHAN and
YOUSSIF ABDULHAMID,

        Plaintiffs,

                                        Case No. 25-12675

v.                                      Judge:

ISLAND LAKE OF NOVI COMMUNITY
ASSOCIATION; ISLAND LAKE VINEYARDS
ASSOCIATION; KRAMER-TRIAD
MANAGEMENT GROUP, LLC; KRISTIN
HALMAGHI; and REAL ESTATE ONE, INC.,
Jointly and Severally,

        Defendants.

_____

**AKEEL & VALENTINE, PLC**
SHEREEF H. AKEEL (P54345)
HASAN KAAKARLI (P81099)
HAYDEN PENDERGRASS (P86888)
Attorneys for Plaintiff
888 W. Big Beaver Road., Suite 350
Troy, MI 48084
(248) 269-9595
shereef@akeelvalentine.com
hasan@akeelvalentine.com
hayden@akeelvalentine.com

_____

## COMPLAINT AND JURY DEMAND

1

**NOW COME** Plaintiffs, FATIMA KHAN and YOUSSIF ABDULHAMID, by and through their undersigned counsel, AKEEL & VALENTINE, PLC, and for their Complaint against the above-named Defendants, states as follows:

## JURISDICTION AND VENUE

1. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because this action arises under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3619, and 42 U.S.C. §§ 1981 and 1982.

2. This Court has jurisdiction under 28 U.S.C. § 1343(a)(3)–(4) because Plaintiffs seek to redress deprivations of civil rights secured by federal law.

3. This Court has jurisdiction under 42 U.S.C. § 3613(a) because this civil action enforces rights under the FHA.

4. The Court has supplemental jurisdiction over related state-law claims under 28 U.S.C. § 1367(a) because they form part of the same case or controversy.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District and all Defendants reside in Michigan.

## PARTIES

6. Plaintiff, Fatima Khan, is a natural person who resides at 26565 Anchorage Court, Novi, Michigan 48374.

7.     Plaintiff, Youssif Abdulhamid, is a natural person who resides at 26565 Anchorage Court, Novi, Michigan 48374.

8.     Plaintiffs Khan and Abdulhamid are married individuals who reside at 26565 Anchorage Court within the Island Lake of Novi residential community.

9.     Plaintiff Khan is an American citizen of Pakistani descent and is a practicing Muslim.

10.    Plaintiff Abdulhamid is an American citizen of Libyan descent and is a practicing Muslim.

11.    Defendant, Island Lake of Novi Community Association ("ILONCA"), is a Michigan nonprofit corporation that governs the Island Lake of Novi residential community in Novi, Michigan.

12.    Defendant, Island Lake Vineyards Association ("ILVA"), is Michigan nonprofit corporation that is a constitution association of ILONCA that governs a subdivision within the Island Lake of Novi residential community in Novi, Michigan.  The President of ILVA, Andrew LeFevre, is a member of the ILONCA Board of Directors.  ILONCA and ILVA are referred collectively herein as the "HOA".

13.    Defendant, Kramer-Triad Management Group, LLC ("KTMG"), is a Michigan limited liability company that is ILVA's managing agent, with KTMG employee, Nichelle McFarlin, serving as ILVA's property manager.

3

14.     Defendant, Kristin Halmaghi, is a licensed real estate salesperson who listed and marketed the single-family home at 26565 Anchorage Court in Island Lake of Novi during Plaintiffs' purchase process.

15.     Defendant, Real Estate One, Inc. ("REO"), is a real estate brokerage corporation doing business in Michigan that employed and/or supervised Halmaghi at all relevant times.

## GENERAL ALLEGATIONS

16.     In 2023, Plaintiffs sought to purchase the single-family residence at 26565 Anchorage Court in Island Lake of Novi in Novi, Michigan.

17.     Defendant Halmaghi acted as the seller's listing agent for 26565 Anchorage Court during Plaintiffs' efforts to purchase the property.

18.     During showings, Defendant Halmaghi made belittling remarks about the ethnicities of community service workers while walking Plaintiffs through the home.

19.     During the same interactions, Defendant Halmaghi suggested Plaintiffs' family might find the house "too big for you," immediately following a discussion referencing religion.

20.     Plaintiffs reasonably understood Halmaghi's comments to reflect bias based on religion, ethnicity, and national origin.

21.     Plaintiffs were fully qualified buyers with strong pre-approval and proof of funds from a reputable national lender.

22.     Despite Plaintiffs' qualifications, Halmaghi repeatedly questioned Plaintiffs' financial wherewithal and probed their occupations beyond customary practice.

23.     Plaintiffs submitted a bona fide written offer to purchase the property on terms competitive with alternative offers.

24.     Halmaghi failed to fairly and promptly present Plaintiffs' offer to the sellers consistent with industry standards.

25.     Halmaghi discouraged additional showings of the vacant property to Plaintiffs after they expressed continued interest.

26.     Halmaghi expressed hostility toward Plaintiffs' buyer's agents, Luma and Nadine Salamy, who are Arab-American Muslim women, when those agents attempted to confirm receipt of Plaintiffs' offer.

27.     Halmaghi attempted to obtain a portion of Plaintiffs' agents' commission despite not representing Plaintiffs.

28.     Halmaghi conveyed conflicting guidance to Plaintiffs regarding offer terms and timing that created unnecessary friction in the transaction.

29.     When a prior buyer's financing failed, Halmaghi did not promptly inform Plaintiffs that the property was again available.

30.     The sellers accepted a lower offer than Plaintiffs' offer after Halmaghi advised them on what she viewed as the "safest route."

31.     Halmaghi's advice to the sellers was based on her subjective comfort with another agent and her subjective assessment of that buyer's financing.

32.     The buyer accepted on Halmaghi's advice lost his job and did not complete the transaction.

33.     The next buyer that followed the collapsed deal backed out for personal reasons and did not complete the transaction.

34.     During the sale process, the sellers did not receive Plaintiffs' proof-of-funds materials despite Plaintiffs having provided overwhelming funding evidence to Halmaghi.

35.     Plaintiffs ultimately closed on the home on or about August 4, 2023, after directly clarifying the sellers' preferences and updating their offer accordingly.

36.     Plaintiffs' winning offer was $20,000 more than their original offer.

37.     After closing, Plaintiff Abdulhamid published an accurate review on Facebook and/or Google describing Halmaghi's conduct.

38.     Shortly after Plaintiffs' reviews, Plaintiffs were removed from and blocked from the private "Island Lake of Novi Residents" Facebook Group ("Resident Group").

39.    The Resident Group is a private forum restricted to approved members and not visible to non-members.

40.    ILONCA regularly directed residents to the Resident Group for community news, events, amenities, and safety notices.

41.    ILONCA's President and Board members posted HOA announcements in the Resident Group as part of regular HOA communications practice.

42.    ILONCA acknowledged that approximately ninety percent of items posted in the Resident Group were later duplicated to an "official" channel, leaving at least ten percent not duplicated.

43.    Plaintiffs requested ILONCA's assistance to restore access to the Resident Group after being excluded.

44.    ILONCA refused to take corrective action and claimed it had no control over the Resident Group while continuing to benefit from its use.

45.    Plaintiffs continued to pay monthly HOA assessments while being excluded from communications and services provided to other residents.

46.    On or about April 28, 2025, ILONCA, through counsel, minimized the issues as a "personal" dispute and offered only to remove future references to the Resident Group from its email communications.

47.    On or about May 28, 2025, ILVA, through its managing agent KTMG, issued a written Notice of Violation alleging Plaintiffs maintained an unkempt yard.

48.    The Notice of Violation enclosed a photograph that did not depict Plaintiffs' home.

49.    At the same time, the cul-de-sac common-area circle that the HOA maintains was at least equally unkempt, if not worse, than the yard depicted in the Notice of Violation photograph ILVA (though KTMG) issued Plaintiff.

50.    The Notice of Violation after Plaintiffs advised that the photograph was of a different property.

51.    The exclusion from the Resident Group and the baseless Notice of Violation followed Plaintiffs' protected complaints and requests for equal access.

52.    The exclusion from the Resident Group and the baseless Notice of Violation demonstrate retaliatory motive.

53.    Halmaghi serves as an administrator of the Resident Group and controls membership approvals and removals.

54.    Halmaghi also runs the "Social Committee" for ILONCA.

55.    Halmaghi excluded Plaintiffs from the Resident Group after learning of their protected complaints.

56.    ILONCA allowed Halmaghi to continue administering the Resident Group after being placed on notice of her discriminatory and retaliatory conduct.

57.    ILONCA continued to rely on the Resident Group for HOA communications while Plaintiffs remained excluded.

58.    REO received Plaintiffs' complaints about Halmaghi's discriminatory behavior and handling of transaction communications.

59.    REO failed to conduct a reasonable investigation into Halmaghi's conduct after receiving complaints.

60.    REO failed to discipline, retrain, or otherwise correct Halmaghi's conduct after receiving complaints.

61.    REO benefited from Halmaghi's continued production and ratified her conduct by inaction.

62.    As a result of Defendants' acts and omissions, Plaintiffs suffered unequal access to HOA communications and services, emotional distress, humiliation, and loss of community standing.

63.    As a result of Defendants' acts and omissions, Plaintiffs incurred attorney's fees and expenses to protect their rights.

## COUNT I

**Fair Housing Act – Discrimination in Sale**
**42 U.S.C. § 3604(a)**
**Against Defendants Halmaghi & REO**

64.    Plaintiffs incorporate by reference paragraphs 1 through 62 as though fully stated herein.

65.     The Fair Housing Act ("FHA") generally protects individuals from discrimination in housing on the basis of race, color, religion, sex, handicap, familial status, or national origin.  42 U.S.C. §§ 3604 et seq.

66.     The FHA makes it unlawful for homeowners, landlords, realtors, and neighborhood housing associations, "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin."  42 U.S.C. § 3604(a).

67.     Plaintiffs are members of protected classes based on religion, race, and ethnicity.

68.     Plaintiffs applied to purchase and were qualified to purchase the dwelling at 26565 Anchorage Court.

69.     Plaintiffs submitted a bona fide offer to purchase on competitive terms.

70.     Halmaghi acted as the listing agent and controlled access to the dwelling and communications with the sellers during Plaintiffs' purchase efforts.

71.     Halmaghi made statements reflecting bias based on religion and ethnicity during showings with Plaintiffs.

72.     Halmaghi discouraged additional showings to Plaintiffs after they expressed continued interest in the property.

73.     Halmaghi failed to fairly and promptly present Plaintiffs' offer to the sellers consistent with industry standards.

74.     Halmaghi did not promptly advise Plaintiffs that the property was again available when a prior buyer's financing failed.

75.     Halmaghi withheld or failed to transmit Plaintiffs' proof-of-funds materials to the sellers despite Plaintiffs having provided overwhelming funding evidence to her.

76.     Halmaghi advised the sellers to accept a lower offer based on her subjective "comfort" with another agent and her subjective assessment of financing rather than Plaintiffs' documented qualifications.

77.     The lower offer accepted on Halmaghi's advice failed when that buyer lost his job and did not complete the transaction.

78.     A subsequent buyer also failed to complete the transaction for personal reasons.

79.     Halmaghi expressed hostility toward Plaintiffs' agents and attempted to obtain a portion of their commission, creating additional barriers for Plaintiffs' transaction.

80.     Halmaghi's conduct made the dwelling less available to Plaintiffs on equal terms because of Plaintiffs' protected characteristics.

11

81.     REO is vicariously liable for Halmaghi's acts because she acted within the scope of her agency during the sale.

82.     REO is directly liable for negligent supervision and ratification by failing to investigate and correct Halmaghi's conduct after notice.

83.     Plaintiffs suffered damages proximately caused by Defendants' discriminatory acts during the sale phase, including emotional distress and increased transaction burdens.

84.     Plaintiffs seek declaratory relief, injunctive relief, compensatory damages, punitive damages where appropriate, and attorneys' fees under 42 U.S.C. § 3613(c).

## COUNT II

**Fair Housing Act – Terms, Conditions, Privileges, & Services**
**42 U.S.C. § 3604(b)**
**Against Defendants ILONCA, ILVA, & KTMG**

85.     Plaintiffs incorporate by reference paragraphs 1 through 62 as though fully stated herein.

86.     The FHA makes it unlawful for homeowners, landlords, realtors, and neighborhood housing associations, "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C.A. § 3604(b).

12

87.     After purchase, Plaintiffs were entitled to equal terms, conditions, and privileges of homeownership and to equal services and facilities in connection with their dwelling.

88.     ILONCA provides housing-related services to homeowners, including communications, community notices, and access to amenities.

89.     ILONCA endorsed and used the Resident Group as a primary channel for HOA communications and services.

90.     ILONCA knew the Resident Group was private, excluded certain residents, and contained content not duplicated to "official" channels.

91.     ILONCA knew Plaintiffs were excluded from the Resident Group and thereby denied access to HOA communications and services.

92.     ILONCA refused to restore Plaintiffs' access or to provide a truly equivalent, contemporaneous alternative channel delivering the same content.

93.     ILVA (through its agent KTMG) issued a Notice of Violation using a photograph of another home shortly after Plaintiffs pressed for equal access to communications.

94.     ILONCA's and ILVA's actions altered Plaintiffs' terms, conditions, and privileges of ownership and denied services and facilities in connection with their dwelling because of protected characteristics and protected activity.

95.     Plaintiffs suffered damages including loss of equal access to services, emotional distress, and reputational harm.

96.     Plaintiffs seek declaratory relief, injunctive relief, compensatory damages, punitive damages where appropriate, and attorneys' fees under 42 U.S.C. § 3613(c).

### COUNT III

**Fair Housing Act – Interference / Retaliation**
**42 U.S.C. § 3617**
**Against Defendants ILONCA, ILVA, & Halmaghi**

97.     Plaintiffs incorporate by reference paragraphs 1 through 62 as though fully stated herein.

98.     42 U.S.C. § 3617 states that "[i]t shall be unlawful to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title."

99.     Plaintiffs exercised rights protected by 42 U.S.C. § 3604 by seeking to purchase a dwelling and by opposing discriminatory practices.

100.   The conduct of Defendants violates 42 U.S.C.§ 3617, because Defendants coerced, intimidated, threatened, and interfered with Plaintiffs in the

exercise and enjoyment of their right to Fair Housing opportunities, as is afforded by 42 U.S.C.§ 3604.

101.   Halmaghi excluded Plaintiffs from the Resident Group after learning of their protected complaints.

102.   ILONCA refused to remedy Plaintiffs' exclusion while continuing to use the Resident Group for HOA communications.

103.   ILVA (through its agent KTMG) issued a Notice of Violation using a photograph of a different home shortly after Plaintiffs pressed for equal access.

104.   The sequence and timing of the exclusion and violation constitute interference, coercion, and intimidation on account of Plaintiffs' exercise of FHA rights.

105.   Defendants' conduct would deter a reasonable homeowner from exercising FHA rights.

106.   Plaintiffs suffered damages proximately caused by Defendants' interference and retaliation, including emotional distress and loss of equal housing-related services.

107.   Plaintiffs seek declaratory relief, injunctive relief, compensatory damages, punitive damages where appropriate, and attorneys' fees under 42 U.S.C. § 3613(c).

## COUNT IV

**Violation of Property Rights
42 U.S.C. § 1982
Against All Defendants**

108. Plaintiffs incorporate by reference paragraphs 1 through 62 as though fully stated herein.

109. 42 U.S.C. § 1982 states that, "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

110. 42 U.S.C. § 1982 guarantees all citizens the same right as white citizens to purchase and hold real property.

111. The Supreme Court has held that § 1982 bars all racial discrimination, private as well as public, in the sale or rental of real property, including housing. *City of Memphis v. Greene*, 451 U.S. 100, 120 (1981).

112. During the sale phase, Halmaghi and REO interfered with Plaintiffs' equal right to purchase by discouraging access, failing to present offers, failing to transmit proof-of-funds, and steering the sellers to a lower offer based on subjective comfort unrelated to Plaintiffs' qualifications.

113. After the sale, ILONCA and Halmaghi interfered with Plaintiffs' equal right to hold and fully enjoy their property by excluding them from HOA

16

communications, as did ILVA (through its agent KTMG) by issuing a retaliatory violation based on a misidentified photograph.

114. Defendants' actions were motivated, at least in part, by Plaintiffs' protected characteristics and by Plaintiffs' protected opposition to discrimination.

115. Plaintiffs suffered damages, including loss of equal property rights and associated emotional distress.

116. Plaintiffs seek compensatory and punitive damages and attorneys' fees under 42 U.S.C. § 1988.

## COUNT V

### Violation of Contract Rights
### 42 U.S.C. § 1981
### Against Halmaghi & REO

117. Plaintiffs incorporate by reference paragraphs 1 through 62 as though fully stated herein.

118. 42 U.S.C. § 1981 states that, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

119. 42 U.S.C. § 1981 protects the right to make and enforce contracts without respect to race.

120. Plaintiffs entered into and enforced a purchase agreement for 26565 Anchorage Court.

121. Halmaghi interfered with Plaintiffs' contract rights by withholding or failing to transmit proof-of-funds, discouraging access, failing to fairly present offers, and steering the sellers to a less qualified lower offer based on subjective comfort rather than objective qualifications.

122. REO is vicariously liable for Halmaghi's conduct and is directly liable for failing to supervise and correct her conduct after notice.

123. Plaintiffs suffered damages including delay, increased transaction burdens, and emotional distress.

124. Plaintiffs seek compensatory and punitive damages and attorneys' fees under 42 U.S.C. § 1988.

## COUNT VI

**Violation of Michigan Elliott-Larsen Civil Rights Act**
**MCL § 37.2501 et seq.; § 37.2701**
**Against All Defendants**

125. Plaintiffs incorporate by reference paragraphs 1 through 62 as though fully stated herein.

126.   ELCRA prohibits discrimination in real estate transactions and housing-related services based on religion, race, color, and national origin and prohibits retaliation.

127.   During the sale phase, Halmaghi and REO discriminated against Plaintiffs in the terms, conditions, or privileges of sale by discouraging access, failing to present offers, failing to transmit proof-of-funds, and steering the sellers to a lower offer on subjective grounds unrelated to Plaintiffs' qualifications.

128.   During the sale phase, Halmaghi and REO refused to receive and transmit a bona fide offer and proof-of-funds on equal terms.

129.   After the sale, ILONCA and Halmaghi discriminated in services and privileges of homeownership by excluding Plaintiffs from HOA communications, as did ILVA (through its agent KTMG) by issuing a Notice of Violation based on a misidentified photograph shortly after Plaintiffs' protected complaints.

130.   After the sale, ILONCA, ILVA, KTMG, and Halmaghi retaliated against Plaintiffs for opposing discrimination by exclusion from communications and by fabricated enforcement.

131.   Plaintiffs suffered damages recoverable under ELCRA, including emotional distress and loss of housing-related privileges.

132.   Plaintiffs seek declaratory and injunctive relief, compensatory and exemplary damages, and attorneys' fees under MCL § 37.2802.

## COUNT VII

**Negligent Hiring, Supervision, & Retention**
**Michigan Common Law**
**Against Defendant REO**

133.   Plaintiffs incorporate by reference paragraphs 1 through 62 as though fully stated herein.

134.   REO owed duties to exercise reasonable care in hiring, supervising, training, and retaining real estate agents regarding nondiscrimination and fair dealing.

135.   REO received complaints describing Halmaghi's failure to present offers, failure to transmit proof-of-funds, discouraging access, hostility to cooperating brokers, and steering based on subjective comfort rather than objective qualifications.

136.   REO failed to conduct a reasonable investigation into Halmaghi's conduct after receiving complaints.

137.   REO failed to discipline, retrain, or otherwise correct Halmaghi's conduct after receiving complaints.

138.   REO's breach of duty enabled continued misconduct that harmed Plaintiffs.

139.   Plaintiffs suffered damages proximately caused by REO's negligence.

## COUNT VIII

### Intentional Infliction of Emotional Distress
### Michigan Common Law
### Against Defendants Halmaghi, ILONCA, ILVA, & KTMG

140. Plaintiffs incorporate by reference paragraphs 1 through 62 as though fully stated herein.

141. Halmaghi's conduct – including biased statements, discouraging access, failure to present offers, failure to transmit proof-of-funds, and excluding Plaintiffs from the Resident Group after Plaintiffs made protected complaints – was extreme and outrageous.

142. ILONCA's conduct – including endorsing a private, exclusionary forum and refusing to restore access to such forum while acknowledging a communications gap – was extreme and outrageous.

143. The conduct of ILVA (through its agent KTMG) – including issuing a violation based on a misidentified photograph after Plaintiffs made protected complaints – was extreme and outrageous.

144. Defendants intended to cause or recklessly disregarded the likelihood of causing severe emotional distress.

145. Plaintiffs suffered severe emotional distress as a result of Defendants' conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that the Court enter judgment in their favor and against Defendants, jointly and severally, and award:

A. Declaratory judgment that Defendants violated the FHA, 42 U.S.C. §§ 1981 and 1982, and ELCRA;

B. Injunctive relief requiring the HOA and/or Halmaghi to reinstate Plaintiffs to the Resident Group or to create and use an HOA-controlled inclusive platform that contemporaneously disseminates all HOA communications; to cease use of private exclusionary forums for HOA business; to adopt and enforce anti-discrimination and anti-retaliation policies; and to rescind the May 28, 2025, violation and correct HOA records;

C. Injunctive relief requiring REO to implement nondiscrimination training, supervision, and monitoring and to investigate and discipline Halmaghi;

D. Compensatory damages, including emotional distress, humiliation, and loss of housing-related services and privileges;

E. Punitive damages against appropriate Defendants;

F. Attorneys' fees and costs under 42 U.S.C. § 3613(c)(2), 42 U.S.C. § 1988(b), and MCL § 37.2802;

G. Pre- and post-judgment interest; and

H. Such other and further relief as the Court deems just and proper.

Respectfully,

Dated: August 25, 2025

/s/ Shereef H. Akeel
Shereef H. Akeel (P54345)
Hasan Kaakarli (P81099)
Hayden Pendergrass (P86888)
AKEEL & VALENTINE, PLC
888 W. Big Beaver Road, Ste. 350
Troy, MI 48084
(248) 269-9595
shereef@akeelvalentine.com
hasan@akeelvalentine.com
hayden@akeelvalentine.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FATIMA KHAN and
YOUSSIF ABDULHAMID,

        Plaintiffs,

                                              Case No. 25-12675

v.                                           Judge:

ISLAND LAKE OF NOVI COMMUNITY
ASSOCIATION; ISLAND LAKE VINEYARDS
ASSOCIATION; KRAMER-TRIAD
MANAGEMENT GROUP, LLC; KRISTIN
HALMAGHI; and REAL ESTATE ONE, INC.,
Jointly and Severally,

        Defendants.

_____

**AKEEL & VALENTINE, PLC**
SHEREEF H. AKEEL (P54345)
HASAN KAAKARLI (P81099)
HAYDEN PENDERGRASS (P86888)
Attorneys for Plaintiff
888 W. Big Beaver Road., Suite 350
Troy, MI 48084
(248) 269-9595
shereef@akeelvalentine.com
hasan@akeelvalentine.com
hayden@akeelvalentine.com

**JURY DEMAND**

24

**NOW COME** Plaintiffs, FATIMA KHAN and YOUSSIF ABDULHAMID, by and through their undersigned counsel, AKEEL & VALENTINE, PLC, and hereby demand a trial by jury on all issues so triable.

                                          Respectfully,

Dated: August 25, 2025                    */s/ Shereef H. Akeel*
                                          Shereef H. Akeel (P54345)
                                          Hasan Kaakarli (P81099)
                                          Hayden Pendergrass (P86888)
                                          AKEEL & VALENTINE, PLC
                                          888 W. Big Beaver Road, Ste. 350
                                          Troy, MI 48084
                                          (248) 269-9595
                                          shereef@akeelvalentine.com
                                          hasan@akeelvalentine.com
                                          hayden@akeelvalentine.com
                                          *Attorneys for Plaintiffs*