UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FATIMA KHAN, et al.,

      Plaintiffs,

v.

                                  Case No. 25-cv-12675
                                  HON. MARK A. GOLDSMITH

ISLAND LAKE OF NOVI
COMMUNITY ASSOCIATION, et al.,

      Defendants.

_____/

**OPINION & ORDER**
**GRANTING DEFENDANT ISLAND LAKE OF NOVI COMMUNITY ASSOCIATION'S**
**MOTION TO DISMISS (Dkt. 23)**

Plaintiffs Fatima Khan and her husband Youssif Abdulhamid brought this case against Island Lake of Novi Community Association (ILONCA), Island Lake Vineyards Association (ILVA), Kramer-Triad Management Group, LLC (KTMG), Kristin Halmaghi, and Real Estate One, Inc. (REO) alleging violations of various fair housing and other property laws, which affected Plaintiffs' purchase and enjoyment of their home in Novi, Michigan. See Compl. (Dkt. 1).

Before the Court is Defendant ILONCA's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) (Dkt. 23). For the reasons discussed below, the Court grants ILONCA's motion and dismisses it from the case.[1]

## I.   BACKGROUND

Khan is an American citizen of Pakistani descent and is a practicing Muslim. Compl. ¶ 9. Abdulhamid is an American citizen of Libyan descent and is a practicing Muslim. Id. at ¶ 10.

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the motion to dismiss, the briefing includes Plaintiffs' response (Dkt. 27) and ILONCA's reply brief (Dkt. 28).

Defendant ILONCA is a nonprofit corporation that "governs" the Island Lake of Novi residential community.  Id. ¶ 11.  Defendant Halmaghi acted as the real estate listing agent for the sellers of the house that Plaintiffs purchased within the Island Lake of Novi residential community in 2023.  Id. ¶ 8, 16–17.  Halmaghi also runs the social committee for ILONCA.  Id. at ¶ 54.

Plaintiffs allege that, prior to the sale and during a walkthrough of the home, Halmaghi "made belittling remarks about the ethnicities of community service workers."  Id. at ¶ 18.  The complaint does not explain who the service workers are, or any other context for the comments.  She also suggested the house was "too big" for Plaintiffs, following a discussion about religion.  Id. at ¶ 19.  Plaintiffs understood Halmaghi's comments as reflecting bias based on their religion, ethnicity, and national origin.  Id. at ¶ 20.  They allege that Halmaghi "repeatedly questioned Plaintiffs' financial wherewithal and probed their occupations beyond customary practice."  Id. at ¶ 22.  She also failed to present Plaintiffs' initial purchase offer to the sellers in a fair and timely manner.  Id. at ¶¶ 22–23.

After other buyers' offers fell through, the sellers ultimately accepted Plaintiffs' offer.  Plaintiffs allege that, to secure acceptance, they had to bypass Halmaghi and work directly with the sellers.  Id. at ¶ 35.  After the closing, Abdulhamid published an "accurate review on Facebook and/or Google describing Halmaghi's conduct."  Id. at ¶ 37.  The complaint does not describe any details about what the review contained other than that it described "Halmaghi's conduct."  Id.

After Abdulhamid posted his review of Halmaghi online, Plaintiffs were removed from a private group on Facebook, called "Island Lake of Novi Residents," which they describe as "a private forum restricted to approved members and not visible to non-members" (referred to as "the group").  Id. at ¶ 39.  She also acts as the administrator for the group.  Id. at ¶ 53.  They specify that Halmaghi "controls membership approvals and removals" for the group.  Id.  Halmaghi

2

removed them only after she learned about Abdulhamid's online review of her conduct during the home purchase.  Id. at ¶¶ 53, 55.

Plaintiffs explain that ILONCA "regularly directed" Island Lake of Novi residents to the group "for community news, events, amenities, and safety notices."  Id. at ¶ 40.  They state that ILONCA's board president and board members were also members of the group and used it to "post[] HOA [Homeowners Association] announcements. . . as part of regular communications practice."  Id. at ¶ 41.

After Halmaghi removed Plaintiffs from the group, they approached ILONCA and asked it "to restore access" because they were "being excluded."  Id. at ¶ 43.  They allege that ILONCA "refused to take corrective action" to restore them to the group, claiming it had no control over it, though, ILONCA continued "to benefit from its use" as a communications tool.  Id. at ¶ 44.  The complaint does not provide details about whom Plaintiffs approached, how they did so, or what they communicated, other than stating they were excluded and wanted their access restored.

After Plaintiffs approached ILONCA for assistance, they allege that ILONCA created an "official channel" for resident communications, which was separate from the group.  See id. at ¶ 42.  Plaintiffs allege that "approximately ninety percent" of the information contained in the group was duplicated into the official communications channel.  Id. at ¶ 42.  ILONCA also stopped notifying its residents about the group.  Id. at ¶ 46.

They allege that ILONCA "allowed Halmaghi to continue administering the [group] after being placed on notice of her discriminatory and retaliatory conduct."  Id. at ¶ 56.  They allege that ILONCA also "continued to rely on the Facebook group for HOA communications" even though that channel excluded Plaintiffs.  Id. at ¶ 57.  They argue that they "suffered unequal access to

3

HOA communications and services, emotional distress, humiliation, and loss of community standing" because of their exclusion from the group.  Id. at ¶ 63.

A month later, two other Defendants, ILVA and KTMG, issued a notice of a HOA violation to Plaintiffs for maintaining an unkempt yard (referred to as the "violation notice").  Id. at ¶ 47. Plaintiffs aver that their yard was not unkempt, and that the violation notice included an enclosed "photograph that did not depict Plaintiffs' home."  Id. at ¶ 48.  Plaintiffs allege that the exclusion from the group and the violation notice "demonstrate a retaliatory motive," though, they do not identify to which Defendant they ascribe that motive.  Id. at ¶ 52.

Plaintiffs' allegations against ILONCA stem from their exclusion from the group and ILONCA's failure to restore their access.  The counts in Plaintiffs' complaint against ILONCA are:

(i)      Count II for violation of the Fair Housing Act (FHA), 42 U.S.C. § 3604(b).

(ii)     Count III for violation of the FHA, 42 U.S.C. §3617.

(iii)    Count IV for violation of property rights under 42 U.S.C. § 1982.

(iv)    Count VI for violation of the Elliott-Larsen Civil Rights Act (ELCRA) Mich. Comp. Laws § 37.2501 et seq.

(v)     Count VIII for intentional infliction of emotional distress (IIED) under Michigan common law.

The Court will refer to Counts II, III, IV and VI collectively as Plaintiffs' fair housing claims.[2]

---

[2] The fair housing statutes prohibit disparate treatment in the terms, conditions or privileges of a person's dwelling, and prohibit conduct that intimidates or interferes with the exercise or enjoyment of a person's property rights, based on race, color, religion, national origin, or other protected status.  See 42 U.S.C. §§ 3604(b), 3617; 1982, Mich. Comp. Laws § 37.2501 et seq.  A plaintiff must demonstrate that the defendant's actions are motivated by discriminatory animus. See Campbell v. Robb, 162 F. App'x 460, 472–475 (6th Cir. 2006).

## II.     ANALYSIS[3]

### A. Fair Housing Claims

ILONCA's motion argues that Plaintiffs' complaint fails for insufficient allegations showing its conduct and intent amount to plausible claims. The Court agrees.

### 1.     Conduct

The gist of Plaintiffs' fair house claims is that they were excluded from membership in the group.   And the basis for ILONCA's alleged liability is that it, somehow, controlled or administered the group.   However, ILONCA contends that the complaint contains no facts demonstrating that ILONCA controlled or administered the group.  Mot. at PageID.193.  The Court agrees.

The complaint is precise in alleging that Halmaghi is the group's "administrator," compl. at ¶ 53; Halmaghi "controls membership approvals and removals" for the group, id.; and Halmaghi is the actor who "excluded Plaintiffs from the [Facebook] Group," id. at ¶ 55.

Although the complaint alleges that Halmaghi "runs the 'Social Committee' for ILONCA," id. at ¶ 53, it fails to explain what the "social committee" is, what the role of "running" the committee involves, and how that role could lead to a conclusion that ILONCA is responsible for Halmaghi's decisions relating to the group.  Indeed, not only is there a dearth of facts on how ILONCA interacts with Halmaghi, there are no facts explaining how ILONCA allegedly "governs" the community.

---

[3] To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  The plausibility standard requires courts to accept the alleged facts as true and to make all reasonable inferences in favor of the plaintiff.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The insufficiency of the allegations as to ILONCA's acts is similar to the insufficiency of the plaintiff's allegations against the defendant in <u>Jones v. Pontiac Housing Comm'n</u>, where the Court granted defendant's 12(b)(6) motion.  No. 25-cv-10681, 2025 WL 4720311, at *4 (E.D. Mich. Nov. 6, 2025), <u>reconsideration stricken sub nom.</u> <u>Jones v. Taylor</u>, No. 25-cv-10681, 2026 WL 1091836 (E.D. Mich. Apr. 22, 2026).  There, the plaintiff brought to the attention of the  city housing commission concerns about a neighbor's harassment.  She later sued the housing commission under § 3604(b) for failing to "take any action" about the neighbor's harassment.  <u>Id.</u> The court dismissed the § 3604(b) claim, stating that the plaintiff failed to demonstrate how the non-party neighbor's harassment was connected to the defendant's alleged discrimination against her.  <u>Id.</u> at *4.  Similarly here, Plaintiffs have failed to allege how Halmaghi's decision to exclude Plaintiffs from the group is connected to ILONCA's alleged discrimination against them.

In sum, to state a claim under any of the fair housing laws that Plaintiffs invoke in this case, Plaintiffs must make allegations that, among other things "plausibly give rise to the inference that a <u>defendant</u> <u>acted</u> as the plaintiff claims."  <u>HDC, LLC v. City of Ann Arbor</u>, 675 F.3d 608, 614 (6th Cir. 2012) (emphasis added).  Plaintiffs' complaint fails to do so, both as to the federal and state statutory claims.  <u>Watters v. Homeowners' Ass'n at Pres. at Bridgewater</u>, 48 F.4th 779, 789 (7th Cir. 2022) (noting that federal and parallel state law claims "often rise and fall with each other").

Plaintiffs try to rehabilitate the complaint's defects through their opposition brief. Plaintiffs' response argues that: (i) ILONCA uses the private Facebook group to communicate with residents about neighborhood news and HOA matters; (ii) ILONCA's board members post content there; (iii) ILONCA directs residents to the group "as part of its community-communications structure;" and (iv) that 24 C.F.R. § 100.7(a), which imposes liability for

6

discriminatory housing practices, including for the actions of a defendant's agents, applies here. Resp. at PageID.228, 231.

But the complaint does not include any of these points. "As a general rule, a court considering a motion to dismiss must focus only on the allegations in the pleadings. . . . This does not include plaintiffs' responses to a motion to dismiss." Waskul v. Washtenaw Cnty. Cmty. Mental Health, 979 F.3d 426, 440 (6th Cir. 2020) (punctuation modified) (internal citation omitted).  Plaintiffs' response brief cannot resuscitate their complaint.

Plaintiffs' opposition also improperly frames the notice of violation issue as though it was part of Plaintiffs' original theory against ILONCA in the complaint.  But the complaint omits any mention of ILONCA in describing the notice of violation. See id. at ¶¶ 88–92.  It states "ILVA, through its managing agent KTMG, issued a written Notice of Violation alleging Plaintiffs maintained an unkempt yard." Id. at ¶ 47.  Moreover, to the extent Plaintiffs believe ILONCA was involved with IVLA's decision to issue the notice, the complaint fails to explain their roles or relationship.  The complaint states only that ILVA is a "nonprofit corporation that is a constitution [sic] association of ILONCA that governs a subdivision within the Island Lake of Novi residential community." Id.  This does little to clarify the relationship or structure of the two entities.[4] Plaintiffs' efforts to rehabilitate or reframe their claims against ILONCA through their response brief fails.

---

[4] Plaintiffs aver in a footnote of their response brief that: "Any argument that ILVA is a separate entity [from ILONCA] ignores the complaint's allegation that ILVA is a 'constituent association' whose president sits on ILONCA's board." Resp. at fn. 2, at PageID.234.  Plaintiffs do not explain what they mean by "ILVA is a constituent association" or how that establishes  ILONCA's connection to ILVA.  They have alleged nothing in the complaint about the corporate structure or organization of ILONCA or IVLA  from which the Court can infer they are the same entity.

Plaintiffs' complaint fails to plausibly allege that ILONCA's conduct caused a violation of Plaintiffs' rights under the fair housing claims.

### 2. Discriminatory Intent

ILONCA  argues that the fair housing claims also fail because Plaintiffs failed to plead any facts that indicate ILONCA acted with discriminatory intent based on Plaintiffs' race, color, religion, sex, familial status, or national origin.  Mot. at PageID.194.  The Court agrees.

All of Plaintiffs' fair housing claims require that a plaintiff plead facts that "plausibly support an inference of discriminatory animus."  HDC, LLC, 675 F.3d at 613.  Discrimination under all of the fair housing claims can be "established either through direct evidence of intentional discrimination or though circumstantial evidence using the burden-shifting framework first articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)."  Id. at 612.  At the pleading stage, this means a plaintiff must at least plead facts that "plausibly support an inference of discriminatory animus."  Id. at 613.  "[C]onclusory allegations or legal conclusions masquerading as factual allegations" will not satisfy this standard.  Id. at 613–614.

ILONCA is correct in arguing that the same logic set forth in the Court's decision in Cannon v. Home Source Detroit controls here.  No. 13-11577, 2013 WL 6133274, at *8 (E.D. Mich. Nov. 21, 2013), vacated and remanded on other grounds (May 16, 2014).  In Cannon, the Court dismissed a complaint for failing to state a claim under § 3604 of the FHA because the plaintiff failed to allege, beyond a conclusory remark, that the defendants acted with the requisite discriminatory animus.  Id.  The Court explained: "To prevail on any of [the plaintiff's] claims under the FHA[,] plaintiff must show proof of intentional discrimination."  Id.  All that the plaintiff alleged in Cannon was that the defendants "treated him differently than similarly situated Caucasians," but the plaintiff did not "provide any specific factual allegations to support these bare assertions of discriminatory treatment."  Id.

8

Plaintiffs' complaint is silent as to ILONCA's alleged discriminatory intent.  It describes Plaintiffs' exclusion from the Facebook group but fails to ascribe any connection between that event and ILONCA's alleged discriminatory intent.  For example, the complaint states: "ILONCA refused to take corrective action and claimed it had no control over the Resident Group while continuing to benefit from its use."  Compl. at ¶ 44.  "On or about April 28, 2025, ILONCA, through counsel, minimized the issues as a 'personal' dispute and offered only to remove future references to the Resident Group from its email communications."  Id. at ¶ 46.  "The exclusion from the Resident Group and the baseless Notice of Violation demonstrate retaliatory motive."  Id. at ¶ 52.  None of these allegations includes a single supportive fact demonstrating ILONCA's discriminatory intent.

Plaintiffs argue in their response brief that they have adequately addressed discriminatory animus because they alleged that Halmaghi, "denied them equal access" to the Facebook group, "because of their protected status and protected activity."  Resp. at PageID.231.  This, again, fails because the exclusion is attributed to Halmaghi, not ILONCA.[5]  In fact, the complaint explains what Plaintiffs believe caused their exclusion from the group, and it has nothing to do with ILONCA's alleged discriminatory intent.  It ascribes a temporal connection between Abdulhamid's online "review" of Halmaghi's conduct during the purchase of their home and their exclusion from the group, where it states:  "Halmaghi excluded Plaintiffs from the [group] after learning of" their online review of her performance of her job during the sale.  Id. at ¶ 55.  Plaintiffs do not connect this event to ILONCA's discriminatory intent.

---

[5] Moreover, Plaintiffs' response brief improperly recharacterizes Halmaghi as ILONCA's "Social Director," but their complaint alleged only that Halmaghi "runs the Social Committee."  Id. at ¶ 54.  As discussed already, Plaintiffs cannot rehabilitate the allegations in their complaint or give Halmaghi an evident role promotion through a response brief.  See Waskul, 979 F.3d at 440.

In sum, Plaintiffs have failed to plead plausible discriminatory intent to sustain their claims under the FHA, § 1982, or the ELCRA against ILONCA. They have also failed to allege a nexus between the Facebook group and ILONCA's conduct to sustain their fair housing claims. For both of these reasons, the Court dismisses Plaintiffs' fair housing claims against ILONCA under Rule 12(b)(6).

### B.     IIED

ILONCA argues that Plaintiffs fail to plead an IIED claim. Mot. at PageID.197. It argues that the actions alleged against ILONCA, exclusion from a private Facebook group, "do[] not, as a matter of law, rise to the level of 'extreme and outrageous' conduct necessary for the tort." Id. The Court agrees. Plaintiffs' claim is that their exclusion from the group is extreme and outrageous. But, as discussed above, there are no allegations that ILONCA was involved with the exclusion from the group so, as a matter of law, the allegations regarding ILONCA's conduct does not rise to the extreme and outrageous threshold required to sustain an IIED claim.

In addition, Michigan's threshold for the conduct required to state a claim for IIED is high. "Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Graham v. Ford, 604 N.W.2d 713, 716 (Mich. App. 1999) (punctuation modified).

The test to determine whether a person's conduct was extreme and outrageous is whether recitation of the facts of the case to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" Lewis v. LeGrow, 670 N.W.2d 675 (Mich. App. 2003). "Generally, it is the trial court's duty to determine whether the defendant's conduct is extreme and outrageous. However, if reasonable minds could differ on the

10

subject, it is a question of fact for the jury." Saad v. Healthgrades Marketplace, LLC, 788 F. Supp. 3d 809, 823 (E.D. Mich. 2024).

The Court agrees with ILONCA that Plaintiffs have not sufficiently set forth a claim that satisfies the threshold for an IIED claim.  When Plaintiffs specifically address their IIED count in the complaint, they provide only one paragraph of conclusory information, which does not explain how that conduct – as rude and as insensitive as it may have been – was  extreme or outrageous. They state only: "ILONCA's conduct [–] including endorsing a private, exclusionary forum and refusing to restore access to such forum while acknowledging a communications gap [–] was extreme and outrageous." Id. at ¶ 142.

Courts have rejected claims as a matter of law for behaviors far more extreme than what is presented here.  For example, this Court dismissed a claim as insufficiently outrageous "where an employee's firing involves chas[ing] an employee through the halls" of the workplace while shouting and yelling at them." Zdravkovski v. Charter Twp. of Redford, 696 F. Supp. 3d 409, 426 (E.D. Mich. 2023) (punctuation modified).  It has also rejected an IIED claim based on the defendant's use of alleged defamatory statements. Id.  Certainly, if a physical chase while yelling in the workplace  and defamation are not sufficiently outrageous to set forth an IIED claim, then it is a stretch to imagine that exclusion from a Facebook group would qualify under this high bar.[6]

Halmaghi's decision to exclude Plaintiffs from the group could be considered an indignity or insult, but it is not objectively atrocious and utterly intolerable behavior in a civilized community.  "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Graham, 604 N.W.2d at 716.

---

[6] Neither party cites to an illustrative case similar to this one, where a plaintiff claimed intentional infliction of emotional distress based on exclusion from an internet or social group.  Nor did the Court find a case discussing a similar claim.

Plaintiffs' response argues that the issue of whether conduct is "extreme and outrageous" is often a question of fact and its determination is disfavored at the motion to dismiss stage.  Resp. at PageID.238.  They argue that, when evaluating this issue, "context matters."  Id.  Because this complaint involves their neighborhood, which is the place where they live and raise their family, the conduct here "can reasonably be viewed as 'beyond all possible bounds of decency,' particularly where it is tied to protected traits and complaints of discrimination."  Id. at PageID.239.

These arguments are not persuasive.  Plaintiffs have not alleged—in the first place—how exclusion from a Facebook group amounts to extreme and outrageous conduct.  The fact that the events occurred in their neighborhood does not change that outcome.  Nor did Plaintiffs make these arguments in the complaint itself, and the Court cannot consider facts as they might have been alleged.

In sum, Plaintiffs' allegations regarding ILONCA have not been plausibly pled and must be dismissed.

### III.   CONCLUSION

For the reasons explained above, the Court grants ILONCA's motion to dismiss.  (Dkt. 23).

**SO ORDERED.**

Dated: June 25, 2026                          s/Mark A. Goldsmith
Detroit, Michigan                             MARK A. GOLDSMITH
                                              United States District Judge

12

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 25, 2026.

s/Joseph Heacox
JOSEPH HEACOX
Case Manager

13